UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

DEBORAH OATES,

            Plaintiff,

                                       Civil No. 06-966-HA

            v.

                                       OPINION AND ORDER

MICHAEL J. ASTRUE,[1]
Commissioner of Social Security,

            Defendant.

_____

HAGGERTY, Chief Judge:

Plaintiff Deborah Oates brings this action for judicial review of a final decision from defendant Commissioner denying plaintiff's application for disability insurance benefits (DIB). Plaintiff filed an application for these benefits on July 18, 2003. She initially alleged disability beginning on January 1, 1989, but the record indicates that she last worked in February 2002.

_____

      [1] On February 12, 2007, Michael J. Astrue became Commissioner of Social Security and he should be substituted in these proceedings as such. 42 U.S.C. § 405(g); Fed. R. Civ. P. 25 (d)(1).

1  - OPINION AND ORDER

Her alleged disability stems from chronic depression, paranoia, obsessive-compulsive disorder, chronic pain in her hands and arms, insomnia, Graves' disease, and fibromyalgia.  Her application was denied initially and upon reconsideration.  Plaintiff requested a hearing before an Administrative Law Judge (ALJ).  A hearing was held on September 13, 2005, at which the ALJ heard testimony from plaintiff, who was represented by an attorney, plaintiff's daughter, plaintiff's friend, a medical expert (ME), and a vocational expert (VE).  The ALJ issued a ruling on February 14, 2006, concluding that plaintiff was not entitled to benefits.  This decision became the Commissioner's final decision upon the Appeals Council's denial of review.  *See* 20 C.F.R. §§ 404.981, 416.1481, 422.210.  Plaintiff subsequently filed a Complaint seeking this court's judicial review.

## FACTUAL BACKGROUND

Plaintiff was born in 1954.  She was forty-nine years old when her insured status expired on September 30, 2003.  She graduated high school, attended less than one year of college, and had vocational training as a hairstylist and masseuse.  Tr. of Admin. R. (hereinafter, Tr.) 650.  She had past relevant work experience a hairstylist.  *Id.*  She testified that any use of her arms causes her pain, and that working with her hands causes cramping and pain.  Tr. 624-25.  She also had pain in her legs and could not stand for long.  Tr. 626.  Plaintiff testified that medication lowers her pain but affects her mental functioning, with the result that "I am confused a lot and I forget things a lot and I cry a lot."  Tr. 631.

## STANDARDS

To establish an eligibility for benefits, a plaintiff has the burden of proving an inability to engage in any substantial gainful activity (SGA) "by reason of any medically determinable

physical or mental impairment" that has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step sequential evaluation process for determining if a person is eligible for benefits because of disability.  20 C.F.R. §§ 404.1520, 416.920; *see also Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989).

First, the Commissioner determines whether the claimant is engaged in SGA.  If the claimant is so engaged, disability benefits are denied.

If not, the Commissioner proceeds to a second step and determines whether the claimant has a medical impairment that meets the regulatory definition of "severe."  20 C.F.R. § 404.1520(a).  If the claimant lacks this kind of impairment, disability benefits are denied.  20 C.F.R. § 404.1520(c).

If the claimant's impairment is severe, the Commissioner proceeds to the third step to determine whether the impairment is equivalent to one or more impairments that the Commissioner has recognized to be so severe they are presumed to preclude SGA.  20 C.F.R. § 404.1520(d).  These are listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listing of Impairments").  If the claimant's condition meets or equals one in the Listing of Impairments, the claimant is presumed conclusively to be disabled.

If the impairment is not one that is presumed to be disabling, the Commissioner proceeds to the fourth step to determine whether the impairment prevents the claimant from engaging in work that the claimant has performed in the past.  If the claimant is able to perform his or her former work, a finding of "not disabled" is made and disability benefits are denied.  20 C.F.R. § 404.1520(e).

If the claimant is unable to perform work that he or she has performed in the past, the Commissioner proceeds to the fifth and final step to determine if the claimant can perform other work in the national economy in light of his or her age, education, and work experience.

In this five-step framework used by the Commissioner, the claimant has the burden of proof as to steps one through four. Accordingly, the claimant bears the initial burden of establishing his or her disability.

However, in the fifth step, the burden shifts to the Commissioner to show there are a significant number of jobs in the national economy that the claimant can perform given his or her residual functional capacity (RFC), age, education, and work experience. *Gomez v. Chater*, 74 F.3d 967, 970 (9th Cir. 1996).

If the Commissioner cannot meet this burden, the claimant is considered disabled for purposes of awarding benefits under the Act. 20 C.F.R. § 404.1520(f)(1). If the Commissioner meets this burden, the claimant must be deemed not disabled for purposes of determining benefits eligibility. 20 C.F.R. §§ 404.1566, 404.1520(g).

The Commissioner's decision must be affirmed if it is based on proper legal standards and its findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999); *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). Substantial evidence is more than a scintilla but less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997) (citation omitted). The Commissioner's denial of benefits is upheld even if the evidence is susceptible to more than one rational interpretation, as long as one of the interpretations supports the decision of the ALJ.

4   - OPINION AND ORDER

*Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citation omitted); *Andrews*, 53 F.3d at 1039-40.

The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision. *Tackett*, 180 F.3d at 1098 (quotation and citation omitted). The Commissioner, not the reviewing court, must resolve conflicts in the evidence, and the Commissioner's decision must be upheld in instances in which the evidence would support either outcome. *Benton v. Barnhart*, 331 F.3d 1030, 1035 (9th Cir. 2003) (citation omitted); *Reddick v. Chater*, 157 F.3d 715, 720-21 (9th Cir. 1998) (citation omitted).

However, a decision supported by substantial evidence still must be set aside if the Commissioner did not apply proper legal standards in weighing the evidence and making the decision. *Reddick*, 157 F.3d at 720-21.

## SUMMARY OF THE ALJ'S FINDINGS

At Step One of the five-step analysis used by the Commissioner, the ALJ found that plaintiff had not engaged in SGA since she left her position as a hairstylist in February 2002. Tr. 20, Finding 2.

At Step Two, the ALJ found that plaintiff had severe impairments, including a dysthymic disorder, a generalized anxiety disorder, and a pain disorder associated with psychological factors and a general medical condition. Tr. 21-23, Finding 3.

At Step Three, the ALJ found plaintiff's impairments, individually and in combination, did not meet or equal the requirements of a listed impairment. Tr. 23-25, Finding 4.

At Step Four, the ALJ found that plaintiff was unable to perform any past relevant work. Tr. 30, Finding 7. The ALJ so found after determining that plaintiff had the RFC to perform

light work without further limitation. She is limited to understanding, remembering, and/or carrying out simple, repetitive tasks and/or instructions. Tr. 25-30, Finding 6.

At Step Five, based in part upon the testimony of a VE, the ALJ found that plaintiff could perform other work existing in significant numbers in the national economy. Tr. 30-31, Finding 11; *see also* 20 C.F.R. §§ 416.920(a)(4)(v), 416.920(g). This work includes employment as a mail clerk and small products assembler. *Id.*

## QUESTIONS PRESENTED

Plaintiff contends that this court should reverse and remand the Commissioner's final decision for further findings or for an award of benefits primarily due to the following alleged errors by the ALJ: (1) adjudicating an incorrect time period; (2) failing to address medical evidence properly; (3) failing to address plaintiff's testimony properly; (4) failing to evaluate witness testimony properly; and (5) relying on VE testimony regarding plaintiff's employability that deviated from applicable standards. As a result of these errors, plaintiff seeks an order reversing the Commissioner's decision and remanding for an award of benefits. This court finds that the ALJ erred in rejecting certain medical opinions presented and plaintiff's testimony. Accordingly, further analysis regarding the ALJ's treatment of lay witness testimony and the VE's testimony and the ALJ's reliance thereon need not be reached.

## DISCUSSION

### 1.    Period of Alleged Disability

Plaintiff asserts that the ALJ adjudicated an incorrect time period of alleged disability for plaintiff. This court disagrees. Although plaintiff initially alleged that she became disabled on January 1, 1989, plaintiff's Work History Report revealed that she worked full-time as a

hairstylist until "10-1999" and from "11-2001" to "01-2001." Tr. 115. When viewed alone and

in the context of the record as a whole, it is clear that "01-2001" contains a typographical error

and should read "01-2002." This is confirmed by a 2005 statement by plaintiff's counsel that

plaintiff last worked in February 2002. Tr. 601-02. The ALJ properly relied on plaintiff's

written statements in the Work History Report, and properly found that the period of review for

plaintiff's alleged disability began in or about February 2002. Tr. 20.

**2.    Medical Opinions**

As noted above, plaintiff argues that the ALJ erred in rejecting several opinions of

treating and examining doctors. The opinions at issue primarily concern plaintiff's cognitive

functioning.

An ALJ must provide clear and convincing reasons for rejecting uncontroverted expert

opinions, and must provide specific, legitimate reasons for rejecting controverted expert

opinions. *Lester v. Chater*, 81 F.3d 821, 830-32 (9th Cir. 1995); *see also Embrey v. Bowen*, 849

F.2d 418, 422 (9th Cir. 1988) (clear and convincing reasons must be provided to support

rejection of a treating physician's ultimate conclusions).

"Although a treating physician's opinion is generally afforded the greatest weight in

disability cases, it is not binding on an ALJ with respect to the existence of an impairment or the

ultimate determination of disability." *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001)

(citing *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir.1989)). An ALJ need not accept a

treating physician's opinion that is conclusory, brief, and unsupported by clinical findings.

*Tonapetyan*, 242 F.3d at 1149 (citing *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992)).

However, an ALJ must give weight not only to the treating physician's clinical findings and

interpretation of test results, but also to the doctor's subjective judgments. *Lester*, 81 F.3d at 832-33 (citing *Embrey*, 849 F.2d at 422).

Examining physician James Nelson, M.D., saw plaintiff at least six times over the course of 2003 and 2004. After examining plaintiff on July 8, 2003, Dr. Nelson noted that her cervical range of motion was about fifty percent of normal. Tr. 167. Regarding her ability to return to work, Dr. Nelson opined:

> [A]t this point it is clear that the patient is not going to be able to return to gainful employment. I think this is due to combination of soft tissue pain, but more due to depression and secondary emotional psycho stressor issues. It is my opinion that she will not be able to return to hairdresser work as she has difficulty raising her arms above the shoulder level.

*Id.*

Doctor Nelson also completed a medical source statement form, in which he indicated that plaintiff was not capable of performing light or sedentary work on a regular and continuing basis, even if she had the freedom to alternate sitting and standing during the workday. Tr. 253-54. Doctor Nelson further indicated that plaintiff was severely limited in her abilities to (1) maintain attention and concentration for extended periods; (2) perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances; (3) complete a normal workday and workweek without interruption from medically based symptoms; and (4) perform at a consistent pace without an unreasonable number and length of rest periods. Tr. 255.

The ALJ rejected Dr. Nelson's opinions on various grounds, including that his findings were not supported by his own or his staff's clinical findings, the doctor was unable to ascertain a "plausible [physical] etiology" in support of plaintiff's complaints, the doctor failed to explain his work capacity assessment adequately, the doctor's treatment was inconsistent with disabling

symptoms, plaintiff's frequency of care was inconsistent, and the doctor "did not have an opportunity to review the full record that establishes [that plaintiff] mislead [sic] them about material evidence because of her secondary gain purposes." Tr. 26. For these purported reasons, the ALJ rejected Dr. Nelson's opinions and adopted the opinion of the ME, Susan Dragovich, Ph.D., that plaintiff was only moderately limited in concentration, persistence, and pace.

The ALJ's reasons for rejecting Dr. Nelson's opinions are specious. The ALJ's conclusory statement that the doctor's opinions are not supported by sufficient objective findings does not achieve the required level of specificity for rejecting even a controverted expert opinion. *See Embrey*, 849 F.2d at 421-22. Moreover, the statement is erroneous. The doctor performed a comprehensive clinical examination that revealed mild impingement in the right shoulder, pain responses to any shoulder strength testing and pain to palpation over her AC joint. Tr. 206-07. Such findings are objective and supported by clinical examination. The doctor also noted repeatedly that plaintiff appeared depressed. Such observations regarding plaintiff's demeanor also provide an objective basis for Dr. Nelson's opinions.

Similarly, the care Dr. Nelson provided plaintiff and plaintiff's frequency of care do not provide a basis for rejecting Dr. Nelson's opinions. The doctor prescribed several different medications to address plaintiff's complaints of chronic pain and sleep disorder, but noted plaintiff had been unable to tolerate some of the medication he prescribed. Such treatment is consistent with Dr. Nelson's opinions regarding plaintiff's impairments. The record also contains treatment notes from at least six visits over the course of 2003 and 2004, which provided sufficient basis for Dr. Nelson's opinions.

9  - OPINION AND ORDER

Finally, the court rejects the ALJ's reasoning that Dr. Nelson was unaware of plaintiff's "secondary gain purposes." Tr. 26. Because the ALJ failed to provide a citation to the record in support of this statement, the court is unable to evaluate the basis for it.

The ALJ also rejected the opinions of plaintiff's treating psychologist, Scott Miller, Psy.D. and the state agency reviewing psychologists. Plaintiff saw Dr. Miller on four occasions. He opined that plaintiff "obviously has 'serious impairment' in her ability to keep a job, and her social functioning is perhaps equally compromised." Tr. 246. He estimated plaintiff's Global Assessment of Functioning (GAF) score[2] at 46. *Id.* Ratings from 41 to 50 are described as: "Severe symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational or school functioning (e.g., no friends, unable to keep a job)." *See* DSM-IV, GAF Listings (emphasis in original).

Doctor Miller further noted that plaintiff probably met the diagnostic criteria for Major Depressive Episode and/or a specific anxiety disorder such as Agoraphobia or Generalized Anxiety Disorder. Plaintiff was also "markedly limited" in her ability to (1) complete a normal workday and workweek without interruptions from psychologically based symptoms; (2) perform at a consistent pace without an unreasonable number and length of rest periods; and (3) travel in unfamiliar places or use public transportation. Tr. 249-50. Plaintiff was moderately limited in five additional areas. Tr. 248-50.

---

[2] The GAF score describes an individual's psychological, social, and occupational functioning, using a single measure based on symptoms of mental impairments, as well as life stressors and physical impairments. *See Am. Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders* 32-34 (4th ed. Text Rev. 2000) (hereinafter, DSM-IV).

The ALJ stated incorrectly that Dr. Miller's opinions conflicted with the opinions of William Trueblood, Ph.D., and David V. Nelson, Ph.D.  As the Commissioner acknowledged, the ALJ characterized the opinions of Dr. Trueblood and Dr. Nelson inaccurately.  The ALJ "stated that these doctors found [p]laintiff could perform simple, routine work," but "neither of these doctors explicitly said that she could do that."  Def.'s Brief at 14.  In fact, Dr. Trueblood noted that plaintiff's depression appeared to result in cognitive impairment but declined to rate the severity of her impairment:

> Social activity currently is very limited but this appears to be due to depression rather than personality factors. . . . Performances were impaired or below average in several areas of cognitive screening, including concentration, memory, general knowledge, and practical judgment.  I suspect that current status does involve cognitive impairment but am not certain of this [and so] cannot rate the degree of impairment.  If more information is needed about the patient's cognitive functioning, a neuropsychological screening examination could be performed. Note that depression seems the most likely cause of any cognitive impairment.

Tr. 188.  The ALJ failed to develop the record by requesting the screening examination proffered by Dr. Trueblood.  The ALJ's failure to include any social limitations in defining plaintiff's RFC was an implicit rejection of Dr. Trueblood's opinion regarding plaintiff's very limited social activity, and the ALJ's failure to offer reasons for this rejection was legal error.

Similarly, Dr. David Nelson neither tested nor offered an opinion regarding plaintiff's cognitive functioning.  The doctor did note that plaintiff "presented herself in a very dysfunctional manner," and that her level of endorsed pain severity was "substantially above the average of that typically reported by patients with chronic pain and the level of interference in her functioning is also very substantially above average."  Tr. 160.  The doctor further noted that plaintiff "would seem to have hardly much of a sense of control over the course of her life and very high level of affective distress."  *Id.*  His diagnoses included adjustment reaction with

11 - OPINION AND ORDER

mixed emotional feature; neurotic depression, rule out; major depressive disorder, recurrent; and generalized anxiety disorder, psychic features associated with disease. *Id.*

Additionally, the court rejects the ALJ's contention that plaintiff misrepresented her history of mental health care over the last decade to Dr. Miller. The citations provided by the ALJ do not support this statement, nor does the record as a whole. Furthermore, as discussed above the ALJ properly limited the period of review to after "about February 2002." This finding precludes the ALJ from relying on plaintiff's medical history prior to February 2002 as a basis for rejecting Dr. Miller's opinion or for discrediting plaintiff. Tr. 20.

Finally, the ALJ improperly rejected the opinions of the state agency psychologists. They determined that there was insufficient evidence to determine the severity of plaintiff's mental impairments from September 22, 2001, through April 30, 2003, but offered a mental RFC assessment for the period beginning May 2003. Tr. 217. In that assessment, they opined that "[s]econdary to [plaintiff's] sensitivity and presentation of tearfulness to exams, it is reasonable that correction to [plaintiff's] work should be presented in a positive, non-threatening manner by an understanding supervisor." Tr. 235. They further noted that plaintiff must avoid "dangerous environments where she would be required to make split-second decisions for her safety or others," due to the side effects of plaintiff's medications. *Id.*

The ALJ rejected the opinions of the state agency psychologists solely on grounds that "they were inconsistent in their assessments" because they indicated that plaintiff's mental impairments were "non-severe" but then assessed "moderate" limitation in plaintiff's mental RFC. Tr. 25. However, the ALJ failed to acknowledge that the assessments involved two different time periods, the former addressing the period between September 2001 and April

2003, and the latter addressing the period after May 2003.  The court finds no inconsistency in assessments of  increasingly severe mental impairments as time progressed.

The Commissioner's *post hoc* reliance on a Psychiatric Review Technique Form (PRTF) that suggested plaintiff had a non-severe mental impairment is misplaced.  The state agency development worksheet explained this apparent inconsistency, as follows: "Superficially, the evidence seems to suggest a Not Severe rating.  However, there were some deficits noted that would be consistent with the proposed [mental RFC]."  Tr. 190.  Moreover, the Commissioner's regulations allow for a finding of a "severe" mental impairment although the limitations recorded on the PRTF did not establish one.  *See* 20 C.F.R. § 404.1520a(d) ("If we rate the degree of your limitation in the first three functional areas as "none" or "mild" and "none" in the fourth area, we will generally conclude that your impairment(s) is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in your ability to do basic work activities").

In sum, this court concludes that the rationalizations presented for rejecting the medical opinions of Drs. Nelson, Miller, Trueblood, and the state agency psychologists fall short of either the exacting standard for rejecting uncontroverted opinions (requiring clear and convincing reasons), or controverted expert opinion (requiring specific, legitimate reasons).  When the Commissioner provides inadequate reasons for rejecting the opinions of a treating or examining physician, those opinions are generally credited as true as a matter of law.  *Widmark v. Barnhart*, 454 F.3d 1063, 1069 (9th Cir. 2006) (citations omitted)*; see also Benecke v. Barnhart*, 379 F.3d 587, 594 (9th Cir. 2004).  These errors, coupled with the ALJ's failure to fully credit plaintiff's symptom testimony, discussed below, compel remand of this action.

13 - OPINION AND ORDER

It is clear from the record that, accepting this evidence as true, the ALJ would be required to find plaintiff entitled to DIB. The ALJ acknowledged that if he accepted Dr. James Nelson's opinions, "there would not be any job, so I am not going to ask that question." Tr. 651. Similarly, Dr. Miller's credited opinion that plaintiff was markedly limited in her ability to complete a normal workday and workweek and to perform at a consistent pace established that plaintiff is disabled. Tr. 249. Finally, the VE's testimony established that no occupation accommodated the limitations assessed by the state agency psychologists. Tr. 653. Accordingly, the remand shall compel the SSA to calculate and award benefits. *See Moisa v. Barnhart*, 367 F.3d 882, 887 (9th Cir. 2004).

**3.      Plaintiff's Testimony**

Plaintiff also asserts that the ALJ failed to assess plaintiff's credibility adequately and therefore erred in discounting her testimony.

If an ALJ finds that a claimant's testimony relating to limitations is unreliable, the ALJ must make a credibility determination citing the reasons why that testimony is unpersuasive. *See Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991). The ALJ must identify specifically what testimony is credible and what testimony undermines the claimant's complaints. *See Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995) (citation omitted); *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).

In evaluating a claimant's claim of subjective symptom testimony, the ALJ must determine whether the claimant has produced objective medical evidence of an underlying impairment which could reasonably be expected to produce the symptoms alleged. 20 C.F.R. § 404.1529(a); *Smolen v. Chater*, 80 F.3d 1273,1281-82 (9th Cir. 1996) (citation and quotation

omitted).  An ALJ may consider medical evidence as a relevant factor in determining a

claimant's credibility.  *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).

The Ninth Circuit set out a threshold test in *Cotton v. Bowen* (reaffirmed in *Bunnell*) to

assist the ALJ in deciding whether to accept a claimant's subjective symptom testimony.  *See* 799

F.2d 1403, 1406-07 (9th Cir. 1986).  If the claimant produces evidence that meets the *Cotton*

test, and there is no evidence of malingering, then the ALJ can reject the claimant's testimony

about the severity of symptoms only after offering specific, clear and convincing reasons for

doing so.  *See Dodrill*, 12 F.3d at 918.

Under the *Cotton* test, a claimant who alleges disability based on subjective symptoms

must meet two tests.  First, the claimant "must produce objective medical evidence of an

underlying impairment 'which could reasonably be expected to produce the pain or other

symptoms alleged.'"  *Bunnell*, 947 F.2d at 344 (quoting 42 U.S.C. § 423(d)(5)(A)); *see also*

*Cotton*, 799 F.2d at 1407.  Second, he or she must show that the impairment or combination of

impairments could reasonably be expected to (not necessarily that it did) produce some degree of

symptom.  This means that the claimant need not produce objective medical evidence of the

*symptom*, or the severity thereof:

> [B]y requiring that the medical impairment "could reasonably be expected to
> produce" pain or another symptom, the *Cotton* test requires only that the causal
> relationship be a reasonable inference, not a medically proven phenomenon.
> Finally, the claimant need not show that her impairment could reasonably be
> expected to cause the severity of the symptom she has alleged; she need only
> show that it could reasonably have caused some degree of the symptom. This
> approach reflects the highly subjective and idiosyncratic nature of pain and other
> such symptoms. . . .  Thus, the ALJ may not reject subjective symptom testimony
> under the *Cotton* analysis simply because there is no showing that the impairment
> can reasonably produce the *degree* of symptom alleged.

*Smolen*, 80 F.3d at 1282 (emphasis added) (citations and footnote omitted).

15 - OPINION AND ORDER

In addition to medical evidence, factors relevant to the ALJ's credibility determination include: a plaintiff's daily activities; the location, duration, frequency, and intensity of his or her symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of any medication; treatment, other than medication; measures used to relieve symptoms; and functional limitations caused by the symptoms. *Id.* at 1284; 20 C.F.R. § 404.1529(c)(3).

"The ALJ must state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion." *Smolen*, 80 F.3d at 1284 (citation omitted). In determining that subjective testimony is not credible, the ALJ may rely on:

> (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities.

*Id.* (citations and footnote omitted).

In sum, if the plaintiff has met the burden of showing that his or her impairment or combination of impairments *could reasonably be expected to* (not that it did in fact) produce some degree of the symptoms plaintiff's testimony describes, and there is no evidence suggesting that the plaintiff is malingering, the ALJ may not reject testimony regarding the severity of plaintiff's symptoms unless there are clear and convincing reasons for doing so. *Id.* at 1283; *see also Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004).

Moreover, the ALJ is not permitted to disbelieve a plaintiff simply because no objective medical evidence supports the plaintiff's testimony regarding the severity of subjective symptoms from which the plaintiff suffers, particularly pain. *Robbins v. Social Sec. Admin.*, 466 F.3d 880, 884 (9th Cir. 2006) (citations and internal quotations omitted). To find a plaintiff not credible, the ALJ must rely either on reasons unrelated to the subjective testimony (*e.g.*,

reputation for dishonesty), or on conflicts between the plaintiff's testimony and conduct, or upon internal contradictions in that testimony. *Id.* (citation and internal quotations omitted).

The ALJ must provide a "narrative discussion" containing specific reasons for the finding and supported by the evidence in the record, and is required to "make clear" the weight the adjudicator gave to the individual's statements and the reasons for that weight. *Id.* (citing SSR 96-7p and SSR 96-8p).

"While an ALJ may certainly find testimony not credible and disregard it as an unsupported, self-serving statement," a court cannot affirm such a determination "unless it is supported by specific findings and reasoning." *Robbins*, 466 F.3d at 884-85 (internal quotation and citation omitted).

In a pain questionnaire, plaintiff alleged that she could no longer hike, camp, visit friends, take trips, sew, write, perform crafts or yard work, walk her dog, use a computer, or go shopping due to chronic pain in her hands, arms, and shoulders, as well as fatigue and confusion. Tr. 131, 133, 134. She had difficulty completing household chores, such as washing dishes, paying bills, washing clothes, making the bed, reading books or papers, or writing. Tr. 131, 634. She relied on her husband and other family members to help with these tasks. Tr. 124. Her pain was worsened by lifting, reaching, or "[a]nything that is continuous or repetitive like holding on to [the] steering wheel of car for too long." Tr. 130; *see also* Tr. 623-25. She no longer attended church because it was too painful to sit through services, and she rarely left her house due to pain, confusion, and embarrassment. Tr. 127. Medications that reduced the pain also reduced her appetite or made her feel "like a zombie" or as if she were losing her mind. Tr. 131, 136. She struggled with depression and cried often. Tr. 631, 634. Plaintiff testified that she dropped

17 - OPINION AND ORDER

out of college after one semester because "I couldn't work on the computer, I couldn't remember, I couldn't study, I just couldn't function in that capacity."  Tr. 627.

The ALJ found plaintiff's allegations not credible because plaintiff was purportedly "motivated by secondary gain," failed to seek sufficient treatment for her alleged impairments, and engaged in daily activities that were inconsistent with her alleged disability.  Tr. 23-24.  As discussed previously, the ALJ provided no citations to evidence of a secondary gain motive.  In fact, the record indicates that plaintiff reported a desire to return to work to several different practitioners.  Tr. 154, 160, 199.  The mere fact that plaintiff has applied for benefit fails to provide a basis for discrediting her.  *See Ratto v. Sec. of DHHS*, 839 F. Supp. 1415, 1429 (D. Or. 1993) ("If the desire or expectation of obtaining benefits were by itself sufficient to discredit a claimant's testimony, then no claimant (or their spouse, or friends, or family) would ever be found credible").

The court also rejects the ALJ's finding that the record shows a "lack of treatment during the relevant period."  Tr. 26.  On the contrary, a review of the record reveals that plaintiff sought treatment from several physicians and psychologists, underwent a number of examinations and evaluations, and attempted a variety of treatments including physical therapy, acupuncture, subacromial injections, and numerous medications.  Tr. 156-63, 199-200, 201-209.  The ALJ may not discredit plaintiff based on her inability to afford treatment or more frequent medical visits.  Tr. 148, 153-54; *see Smolen*, 80 F.3d at 1284 (claimant's inability to afford the cost of treatment was not a valid reason for finding that person not disabled).

Finally, the fact that plaintiff's husband is considered disabled by the Department of Veterans Affairs' due to post-traumatic stress disorder fails to support the ALJ's finding that plaintiff engaged in daily activities inconsistent with her allegations of disability.  That her

18 - OPINION AND ORDER

husband suffers a mental impairment does not preclude plaintiff from relying on him to perform household chores of a physical nature.  Nor does the week-long hunting trip taken by plaintiff's husband provide a basis for rejecting her allegations.  Plaintiff need not demonstrate that she is totally incapacitated to be found unable to engage in substantial gainful activity.  *Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir. 1987).

**3.     Remand**

As a result of the inadequate rejection of medical evidence and the inadequate explanation for rejecting plaintiff's testimony, this court concludes that a remand is appropriate in this matter.  As noted above, 42 U.S.C. § 405(g) provides jurisdiction for this court to review administrative decisions in Social Security benefits cases.

While the first two sentences of Section 405(g) establish this court's jurisdiction, the fourth and sixth sentences of Section 405(g) set forth the exclusive methods by which district courts may remand an action to the Commissioner.  *Shalala v. Schaefer*, 509 U.S. 292, 296 (1993); *see also Melkonyan v. Sullivan*, 501 U.S. 89, 99-100 (1991).

Sentence four provides that the district court "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing" and is "essentially a determination that the agency erred in some respect in reaching a decision to deny benefits."  *Akopyan v. Barnhart*, 296 F.3d 852, 854 (9th Cir. 2002) (quoting 42 U.S.C. § 405(g) and citing *Jackson v. Chater*, 99 F.3d 1086, 1095 (11th Cir. 1996)).  A plaintiff who obtains a sentence four remand is considered a prevailing party for purposes of attorney fees even when the case has been remanded for further administrative action.  *Id*. (citing *Schaefer*, 509 U.S. at 297-302).

19 - OPINION AND ORDER

Conversely, remands ordered pursuant to sentence six of Section 405(g) "may be ordered in only two situations: where the Commissioner requests a remand before answering the complaint, or where new, material evidence is adduced that was for good cause not presented before the agency." *Akopyan*, 296 F.3d at 854-55 (citing *Schaefer*, 509 U.S. at 297 n. 2). Unlike sentence four remands, sentence six remands do not constitute final judgments. *Id*.

The issues presented in this action compel a remand under sentence four. Whether to remand under sentence four for an award of benefits, or for further proceedings, is a matter of judicial discretion. *Harman v. Apfel*, 211 F.3d 1172, 1177 (9th Cir. 2000). The decision turns upon the likely utility of further proceedings. *Id.* at 1179. Such a remand is unnecessary if the record is fully developed and it is clear from the record that the ALJ would be required to award benefits. *Holohan v. Massanari*, 246 F.3d 1195, 1210 (9th Cir. 2001). The rule recognizes "the importance of expediting disability claims." *Id*. (citation omitted). In cases in which it is evident from the record that benefits should be awarded, remanding for further proceedings would delay effectuating the primary purpose of the Social Security Act, which is to give financial assistance to disabled persons because they cannot sustain themselves. *Id*.

It is clear from the record that the ALJ must find the claimant disabled after crediting the evidence in question, and additional proceedings are unnecessary to determine plaintiff's entitlement to benefits. The record is fully developed, and further proceedings "would serve no useful purpose." *See Lester*, 81 F.3d at 834 (if evidence that was improperly rejected demonstrates that claimant is disabled, court should remand for payment of benefits).

Moreover, permitting the Commissioner a further opportunity under these circumstances to amend findings to comport with a denial of disability benefits is not in the interests of justice.

*See Rodriguez v. Bowen*, 876 F.2d 759, 763 (9th Cir. 1989) (if remand for further proceedings would only delay the receipt of benefits, judgment for the claimant is appropriate).

## **CONCLUSION**

Based on the foregoing, this court concludes that the record is fully developed and that further administrative proceedings would serve no useful purpose. Under the applicable standards, after giving the evidence in the record the effect required by law, plaintiff is unable to engage in any substantial gainful activity by reason of her impairments, and she is disabled under the Act beginning in February 2002. Accordingly, the decision of the Commissioner is reversed, and this case is remanded to the Commissioner for the calculation and award of benefits to plaintiff Deborah Oates.

IT IS SO ORDERED.

DATED this   31    day of August, 2007.


           /s/ Ancer L. Haggerty           
Ancer L. Haggerty
United States District Judge

21 - OPINION AND ORDER